IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KEESHA BLAMBLE,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>LELAND DUDEK, Acting Commissioner of Social Security;<br><br>　　　　　Defendant. | **8:24CV445**<br><br><br>**MEMORANDUM AND ORDER** |

This is an action for judicial review for a final decision of the Commissioner of the Social Security Administration ("the Commissioner"). Filing No. 1. The claimant, Keesha Blamble, appeals the Commissioner's decision to deny her application for Social Security benefits under the Social Security Disability ("SSD") program and seeks review pursuant to 42 U.S.C. § 405(g). *Id.; see* Filing No. 18 (Plaintiff's Motion for an Order Reversing the Commissioner's Decision). The Commissioner moves to affirm the decision to deny the SSD benefits. Filing No. 22. A transcript of the hearing held on March 28, 2024, is found in the record at Filing No. 9-2 at 32. This Court has jurisdiction under 5 U.S.C. §§ 702 and 706 to review the final decision. For the reasons stated herein, the Court grants Plaintiff's motion to reverse and denies the Commissioner's motion to affirm the decision to deny SSD benefits.

**BACKGROUND**

I.    **Procedural History**

Blamble filed an application for disability benefits under the SSD program on December 2, 2021, alleging disability beginning on March 8, 2021. Filing No. 9-2 at 11;

Filing No. 19 at 3. The Social Security Administration denied Blamble's application on August 25, 2022, and upon reconsideration on June 9, 2023. Filing No. 9-2 at 11. Blamble subsequently filed a written request for a hearing, which was held on March 28, 2024. Id. The Administrative Law Judge ("ALJ") found that Blamble was not disabled and denied benefits on May 2, 2024. Filing No. 9-2 at 26; Filing No. 19 at 3. Upon Blamble's request, the Appeals Council denied review, finalizing the ALJ's decision. Filing No. 9-2 at 2; Filing No. 19 at 3. Blamble seeks review of the final decision.

## II.    Testimony from ALJ Hearing

Blamble is a forty-seven-year-old woman. Filing No. 9-5 at 2; Filing No. 19 at 4. She has a high school education and has completed two years of college. Filing No. 9-6 at 4; Filing No. 19 at 4. Blamble is a veteran, having served in the military as a truck driver from 1999 to 2004. Filing No. 9-2 at 41–42. Blamble has held a variety of jobs prior to her alleged disability including photographer for Lifetouch Photography from November 2009 to March 2010, retail employee for Best Buy from October 2013 to October 2014, vendor representative for Marketsource HP from October 2014 to October 2016, and customer service representative for PayPal from February 2019 to March 2021. Filing No. 9-6 at 4. The Veterans Administration ("VA") found her totally disabled as of September 7, 2022. Filing No. 9-6 at 42–47.

According to her legal representative present at the March 8, 2024, ALJ hearing, Blamble terminated her job at PayPal on March 8, 2021, due to abdominal pain. Filing No. 9-2 at 36. This abdominal pain stems from her gastroparesis diagnosis. Id. The gastroparesis caused Blamble to "vomit[] almost nonstop." Id. at 39. Blamble underwent surgery in June 2021 to relieve the pain, but the surgery did not help. Id. at 36. She

testified that she needs to use the restroom about once an hour due to the stomach pains and IBS symptoms. *Id.* at 46. She also claimed that she is "usually vomiting once to twice a day." *Id.* However, she had not experienced these symptoms for two months preceding the ALJ hearing. *Id.* The vomiting caused her weight to fluctuate between 190 and 250 pounds. *Id.* at 48. Blamble also testified she occasionally suffers from constipation, which causes her to take more frequent restroom trips. *Id.* She testified that she would need a restroom within "[d]ashing distance" for whatever job she had. *Id.* at 51.

The gastroparesis has led to Blamble being hospitalized "[t]wo to three times a year" for months at a time. *Id.* at 49. However, she testified that even when she is not having a flare up, she is experiencing some kind of symptom from the IBS and gastroparesis. *Id.* at 50.

She also suffers from back, knee, and hip pain. Filing No. 9-2 at 37. She claimed to have a torn labrum in her right hip. *Id.* at 39. She also stated that she has severe arthritis in her right knee. *Id.* at 39–40. She testified she had cartilage removed from her knee on two occasions. *Id.* at 41. Blamble uses a cane and occasionally a four-wheeled walking device to get around. Filing No. 9-2 at 43; Filing No. 19 at 5. She claimed those were prescribed to her by her physical therapist at the VA. Filing No. 9-2 at 43. Blamble testified that the physical therapist also prescribed her a scooter, but she did not have one due to transportation difficulties. *Id.* Blamble had also been attending physical therapy for a bulge in her neck. *Id.* at 46. She later testified she is no longer attending physical therapy as her referral has "run out." *Id.* Blamble states that she needs to shift

3

from sitting to standing every "[h]our to two hours" due to her hip pain. *Id.* at 48–49. She also needs to lay down during the day to relieve pain. *Id.* at 51.

Blamble testified that she suffers from depression, which causes her not to think straight and to have suicidal thoughts. Filing No. 9-2 at 52. She also suffers from anxiety. *Id.* at 52–53. To manage these mental health issues, Blamble attends group therapy classes at the VA three to five days a week. *Id.* at 53. However, she stated her anxiety and depression would increase in a work setting due to deadlines and co-workers. *Id.* at 54. She testified that her mental health makes it difficult to follow instructions, watch TV, or finish a book. *Id.* at 54–55.

Blamble testified to her fibromyalgia diagnosis, saying that it causes her to get prickly skin every day. Filing No. 9-2 at 55–56. She stated that this condition feeds into her anxiety and depression. *Id.* at 56. Blamble recreationally smokes marijuana weekly to help manage the pain from the fibromyalgia. *Id.* at 58.

The ALJ further questioned Blamble on her social activities. Filing No. 9-2 at 44. Blamble had been on two cruises in the preceding year. *Id.* at 44–45. She was also planning one for the next year. *Id.* at 45. She testified that it was easy to follow a gastroparesis diet on the cruises, but she needed to take pain medication and rest a lot after going on excursions during the trip. *Id.* at 56–57.

A vocational expert ("VE") was present at the hearing and offered Dictionary of Occupational Titles ("DOT") classifications of Blamble's past relevant work experience. Filing No. 9-2 at 61. The VE classified Blamble's past relevant work experience as "customer service representative," a sedentary level job, and "training representative," a light exertional level job. *Id.*

The ALJ then asked the VE if Blamble would have the ability to perform her past work as a customer service representative.  Filing No. 9-2 at 61–62.  The VE answered in the negative.  *Id.* at 62.  The ALJ asked for other options.  The VE offered three positions available at the light exertional level, including price marker, router, and collator operator.  *Id.*  The ALJ then asked for jobs at the sedentary exertional level for an individual who needs a restroom within a two-minute walking distance.  *Id.* at 62–63.  The VE answered that the jobs of final assembler, wire wrapper, and lens inserter would be available.  *Id.* at 63.  The ALJ further inquired whether those jobs would be available to an individual who would need unscheduled breaks, leading to them being off task for at least 20% of the workday and having a likelihood of missing four or more workdays a month.  *Id.* at 63–64.  The VE answered there would be no work available.  *Id.* at 64.

Blamble's representative asked the VE if the sedentary jobs listed to the hypothetical individual would be available if the individual was off task more than 10% of the workday due to anxiety and depression.  Filing No. 9-2 at 64–65.  The VE answered in the negative.  *Id.* at 65.  The attorney then inquired whether the sedentary jobs listed to the hypothetical individual would be available if the individual needed a cane for balance and walking to which the VE stated the sedentary jobs would be available.  *Id.*  The attorney asked if the hypothetical individual using a cane could maintain the jobs if they need to shift from sitting to standing and needed to be able to walk at will.  *Id.*  The VE answered in the negative.  *Id.*

### III.   Medical Evidence

Blamble's alleged onset date of disability is March 8, 2021.  Filing No. 9-2 at 11.  The medical evidence is uncontroverted.

### 1. Hip, Knee, Back, Neck, and Wrist Pain

In March 2021, Blamble restarted physical therapy for hip, knee, and low back pain limiting activity after taking a break due to Covid. Filing No. 9-7 at 5. Her initial assessment reflected that she has "reduced functional mobility, reduced activity participation, and increased pain." *Id.* at 5. Blamble was prescribed Celebrex to manage her arthritis and abdominal pain. Filing No. 9-7 at 71. On May 18, 2021, Blamble messaged VA primary care providers concerning CPAP and hip and knee pain issues. Filing No. 12-1 at 359. On June 9, 2021, Blamble saw Dr. Thomas for follow up. Filing No. 9-7 at 72. Dr. Thomas increased the Celebrex dose for arthritis pain. Filing No. 9-7 at 76. She received a right knee sleeve in August 2021. Filing No. 12-1 at 322. She received crutches in November 2021 after experiencing an injury due to a fall. *Id.* at 230; Filing No. 11-1 at 202–03.

In May 2022, Blamble was involved in a car accident, causing her to seek treatment for neck pain. Filing No. 12-1 at 34.

In 2023, Blamble went to primary care partially due to wrist pain. Filing No. 13-2 at 394. An x-ray of Blamble's right wrist revealed no fractures or swelling. Filing No. 14-1 at 14. An x-ray of her cervical spine revealed some mild asymmetry. *Id.* at 15. An MRI of her spine showed mild degenerative changes at several vertebrae. *Id.* at 16–17. She was diagnosed with cervicalgia in January 2024. Filing No. 14-6 at 65.

To manage her hip, knee, back, neck, and wrist pain, Blamble has attended physical therapy, gone to the chiropractor, received corticosteroid injections, and underwent acupuncture with muscle relaxers. *See* Filing No. 9-7 at 139, 143; Filing No.

6

13-2 at 108, 126; Filing No. 14-2 at 4, 15; Filing No. 14-6 at 65. She also has been using a cane for mobility. Filing No. 14-2 at 80.

## 2. Gastroparesis and Related Issues

On April 5, 2021, Blamble sought emergency department treatment for nausea and abdominal pain from her chronic gastroparesis. Filing No. 12-1 at 370–78. On April 13, 2021, Blamble saw Dr. Thomas concerning her gastroparesis and nutrition. Filing No. 9-7 at 60. Dr. Thomas planned a UNMC consultation. Filing No. 9-7 at 65. On April 27, 2021, Lea Murrell, APRN, sent a message to Blamble indicating being in a "tight spot with poor choices for treatment at this juncture" concerning her gastrointestinal impairments. Filing No. 12-1 at 363. Stronger pain medications would worsen nausea and vomiting by worsening gastroparesis and IBS/constipation and Blamble had not tolerated Reglan for nausea. *Id.* Murrell suggested Benadryl every 6 hours as needed for breakthrough nausea. *Id.* On April 28, 2021, a VA pharmacist discussed how Blamble's combination of medications—27 total—could be aggravating her GI symptoms. Filing No. 12-1 at 362. On May 17, 2021, Blamble saw Dr. Thomas for medication management. Filing No. 9-7 at 66. Dr. Thomas prescribed Celebrex for arthritis and abdominal pain, stopped various medications, and continued migraine and sleep medications. Filing No. 9-7 at 71.

On June 15, 2021, Dr. Thomas cleared Blamble for an EGD and pyloroplasty procedure. Filing No. 9-7 at 77–82. On June 22, 2021, Dr. Nandipati, performed the endoscopic pyloroplasty, EGD, and EndoFlip procedure due to Blamble's delayed gastric emptying and gastroparesis. Filing No. 9-7 at 125. On June 30, 2021, Blamble saw APRN Murrell in gastroenterology concerning her history of SIBO, IBS-M, GERD, isolated idiopathic pancreatitis event, and idiopathic gastroparesis. Filing No. 11-1 at 124.

Blamble reported doing fairly well after the June 21, 2021, surgery by Dr. Nandipati. *Id.* She reported increased anxiety since the surgery, which she attributed to recovery, debt collections, and the decrease in duloxetine due to GI side effects. *Id.* Blamble indicated a surgery follow-up appointment planned for July 6, 2021. *Id.*

On July 29, 2021, Blamble saw a nutritionist, concerning working back in solid foods since her June 2021 surgery. Filing No. 11-1 at 130. In August 2021, a nutritionist diagnosed Blamble with malnutrition from inadequate food intake and issues with nausea and vomiting. Filing No. 11-1 at 144. The nutritionist stated that this was evidenced by 18.5% weight loss over six months. *Id.*

A gastric emptying study, performed in December 2021, revealed delayed gastric emptying with seventy-five percent of gastric contents persisting four hours after a meal. Filing No. 11-1 at 514. Subsequently, Blamble continued to report stomach pain and GI issues due to her gastroparesis and IBS. Filing No. 9-6 at 56, 87; Filing No. 13-2 at 113. She also claimed that her depression medication worsened the gastroparesis symptoms. Filing No. 9-6 at 87.

### 3. Mental Health Issues

In March 2021, Blamble called Dr. Schmidt for psychiatric medication management. Filing No. 11-1 at 111–12. Blamble was prescribed bupropion, duloxetine, and trazodone for anxiety, depression, and insomnia. Filing No. 11-1 at 112. She subsequently reduced the duloxetine due to it triggering her gastroparesis symptoms. Filing No. 11-1 at 123. After her pyloroplasty surgery, Blamble's duloxetine prescription increased. Filing No. 12-1 at 336.

On July 19, 2021, Blamble called Dr. Schmidt, asking to increase her duloxetine. Filing No. 12-1 at 336. Dr. Schmidt provided a 90-day prescription. *Id.* In October 2021, Blamble began the VA's PRRC group therapy program. Filing No. 12-1 at 293. She continued to participate in this program throughout the relevant period. *See generally* Filing No. 11-1 at 166–77, 193–262; Filing No. 12-1 at 208–10, 212–13, 216–23, 225–29, 242–43, 246–48, 250–51, 256, 264–77; Filing No. 13-2 at 323.

In July 2023, Blamble underwent a neuropsychological assessment. Filing No. 14-1 at 31. The assessment revealed that Blamble had tangential thought processes "to the extent that it may have impacted some of her scores." Filing No. 19 at 17; Filing No. 14-1 at 31. Overall, her cognitive and education abilities tested average. Filing No. 14-1 at 37, 39. However, Blamble's sustained attention results tested in the low-average range. Filing No. 14-1 at 37.

## IV.    The ALJ's Findings

Ultimately, the ALJ found Blamble was not disabled. Filing No. 9-2 at 26. The ALJ used the five-step sequential evaluation process (20 C.F.R. § 404.1520(a)) in determining the status of disability. Filing No. 9-2 at 12–13. The ALJ determined that Blamble met the insured status requirements of the Social Security Act. *Id.* at 13. At Step One, the ALJ found that Blamble had not engaged in substantial gainful activity since the alleged onset date of March 8, 2021. *Id.*

At Step Two, the ALJ found that Blamble suffers from several severe impairments. Filing No. 9-2 at 13. These include gastroparesis, depressive disorder, anxiety disorder, and post-traumatic stress disorder. *Id.* Blamble also has diagnoses of osteoarthritis (hip and knees); cervical degenerative disc disease; right wrist osteoarthritis/carpal tunnel

9

syndrome; gastroesophageal reflux disease; irritable bowel syndrome; urinary incontinency; obesity; and reduced cognitive function. *Id.* However, the ALJ did not find Blamble's other ailments to be severe under 20 C.F.R. § 404.1522(a) since they have "no more than a minimal limitation upon the Blamble's ability to perform basic work activities." *Id.* at 13–14.

The ALJ stated that Blamble's ailments did not reach the level to be considered severe. In September 2022, examinations within the record revealed that Blamble had moderate tenderness in her hip but full range of motion. Filing No. 9-2 at 14. They also revealed she had pain in her right knee but no erythema, swelling, or effusion. *Id.* Not mentioned by the ALJ, the same examination resulted in a diagnosis of possible greater trochanteric pain syndrome and a change in gait. Filing No. 13-2 at 125–26. The visit included a 2 mL injection of corticosteroid/lidocaine mixture in Blamble's right knee. *Id.* at 126. On April 27, 2023, Blamble attended physical therapy for gait and mobility defects. Filing No. 9-2 at 14. However, the "examination revealed that her gait and mobility were within normal limits and strength." *Id.* Not mentioned by the ALJ for the same visit, is the list of over 40 active problems including gait presentation of mild unsteadiness, right external rotation, decrease knee flexion/extension, decreased hip flexion, slow cadence, and mild Trendelenburg. Filing No. 13-2 at 393–94. Nor did the ALJ note training necessary to familiarize the patient with a rollator to decrease pain and improve safety. *Id.* at 391–92. Regarding her neck pain, the ALJ noted that an x-ray on May 16, 2023, revealed "no evidence of subluxation of the cervical spine on neutral, flexion, or extension," and further imaging performed on January 8, 2024, revealed her spine was normal. *Id.* Not mentioned by the ALJ, is some mild asymmetry of the dens with respect

10

to CI as evidence of a neck spasm.  Filing No. 14-1 at 15.  Also not noted is the follow up radiology report of July 7, 2023, which showed disc protrusion at C3-C4, C4-C5, and C5-C6.  *Id.* at 17.  The accompanying diagnosis was of mild degenerative changes at those levels.  *Id.*  Regarding her wrist, the ALJ noted the examination on May 16, 2023, showed her range of motion was normal, her grip strength was slightly below normal, and she had carpal tunnel syndrome.  Filing No. 9-2 at 14.  The VA gave her a carpal tunnel splint but did not indicate further treatment was needed.  *Id.*  Not mentioned by the ALJ is a note suggesting further diagnostics may be warranted.  Filing No. 14-2 at 41.  The ALJ also noted that although Blamble has gastroesophageal reflux disease, irritable bowel syndrome, and urinary incontinence, he read the record to find she has been able to control the impairments with medication.  Filing No. 9-2 at 15.  However, the ALJ made no citation to the medical record for this conclusion.  Although obesity is no longer listed as an impairment, the ALJ still considered, as required, its effects on Blamble's abilities, finding no evidence that her obesity alone has caused her to be unable to work.  *Id.*  Finally, the ALJ found her reduced cognitive functioning to not be severe as her IQ of 101 put her within the average range.  *Id.*  Not mentioned by the ALJ are the findings of low average scores for sustained attention, and her difficulties due to PTSD, depression, panic disorder, and borderline personality disorder.  Filing No. 14-1 at 37.

At Step Three, the ALJ found that Blamble's impairments did not meet, or medically equal, the criteria of an impairment as listed in 20 C.F.R. §§ 404.1520, 404.1525, or 404.1526.  Filing No. 9-2 at 16.  In coming to this conclusion, the ALJ considered whether Blamble had mental impairments that resulted in "one extreme limitation or two marked limitations in a broad area of functioning."  *Id.* at 17.  The ALJ explained, "[a]n extreme

limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis," while a "marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis." *Id.* In making his findings, the ALJ noted Blamble's ability to perform everyday tasks such as doing laundry, driving, handling personal hygiene, and going to doctor's appointments. *Id.*

At Step Four, the ALJ determined that Blamble has the residual functional capacity ("RFC") to perform light exertional work, as defined in 20 C.F.R. 404.1567(b); however, he found that she should not climb ladders, ropes, or scaffolds. Filing No. 9-2 at 18. Additionally, the ALJ found that Blamble could occasionally climb ramps or stairs; and occasionally balance, kneel, stoop, crouch, or crawl. *Id.* Further, the ALJ determined Blamble should not have concentrated exposure to extreme temperatures, vibration, or unprotected heights. *Id.* In addition, the ALJ found Blamble can understand, follow, and complete simple, repetitive, and routine tasks, and instruction in jobs with no more than occasional contact with the general public and coworkers; and no more than occasional changes in the work setting. *Id.* According to the ALJ, this determination was made by considering all of Blamble's symptoms to the extent that those symptoms can reasonably be accepted as consistent with the objective medical evidence. *Id.* The ALJ considered her symptoms by first determining whether there was an underlying medically determinable physical or mental impairment that could produce the symptoms and then, evaluating "the intensity, persistence, and limiting effect of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities." *Id.* The ALJ admitted that Blamble's medically determinable impairments could be expected to

12

cause her alleged symptoms but contended that the intensity, persistence, and limiting effects of her symptoms were not consistent with the medical evidence. *Id.* at 19.

The ALJ noted Blamble underwent a gastric emptying study in 2011, which revealed she had gastroparesis. Filing No. 9-2 at 19. In response, Blamble underwent pyloroplasty surgery on June 21, 2021, and seemed to be vomiting less afterwards. *Id.* at 20. The ALJ noted that her claims of disabling symptoms are not supported by her examination occurring on August 9, 2022, in which she reported she had had a procedure which released the sphincter to keep food down. *Id.* Not mentioned is the fact that Blamble was on a post-operative soft diet, not a normal diet. Filing No. 11-1 at 130.

The ALJ also did not find the Blamble's subjective allegations of functional limitations to preclude the range of light exertion work described above. Filing No. 9-2 at 20. The ALJ considered records from the VA and from Social Security contract examiner Kevin Berryman, Ph.D., which revealed that Blamble was depressed but still had the ability to keep good hygiene and engage in activities such as going on vacation. *Id.* The notes indicate that she was oriented at the time of examination and had no difficulty with long-term memory. *Id.* at 21. Her memory was average, and her abstract thought was good. *Id.* Blamble's "mood was depressed, and her affect was anxious." *Id.* Accordingly, Dr. Berryman diagnosed her with post-traumatic stress disorder, generalized anxiety disorder with panic attacks, and major depressive disorder. *Id.* The ALJ failed to note that Dr. Berryman's prognosis for Blamble was poor from a mental health standpoint. She is persistently sad, has difficulty sleeping, isolates herself at home, has feelings of worthlessness and has multiple panic attacks on a weekly basis. Filing No. 13-2 at 68.

On October 27, 2022, the VA social worker noted Blamble had started an anti-depressant and had some improvement in her mood. Filing No. 9-2 at 21. The ALJ also made note that in November 2022, Blamble reported to the social worker continued mood improvement as well as engagement in social activities such as going to lunches and planning to go on two separate cruises. *Id.* ALJ did not note that this information was drawn from 22 pages of medical records which concluded with a diagnosis of major depressive disorder, recurrent, moderate; PTSD, chronic; Panic Disorder; and Borderline Personality Disorder. Filing No. 13-2 at 161. Blamble was scheduled for a follow up visit in three months. *Id.*

The ALJ acknowledged Blamble's neurological assessment, which occurred on July 19, 2023. Filing No. 9-2 at 21. In that assessment, Blamble reported that she had difficulty paying attention and needed to complete one task before moving onto another or else she would forget to complete the first task. *Id.* The ALJ determined that this evidence supports a finding that Blamble has the capacity for simple, repetitive, and routine tasks. *Id.* at 22. The ALJ took these observations from a preliminary note for which a formal report followed. The ALJ did not note the unchanged medical diagnosis: PTSD, chronic; Major depressive disorder, recurrent, without psychotic features; Panic disorder, (per history); Borderline personality disorder (per history). Filing No. 14-1 at 40. The report subsequently listed "difficulties with memory/concentration/attention." *Id.* at 41–42.

The ALJ went on to consider medical opinions and prior administrative medical findings. Filing No. 9-2 at 22. He found the prior administrative finding by state agency non-examining family practice consultant Thomas Martin, M.D, to be persuasive. *Id.* That

14

finding indicated that Blamble is limited to a range of light exertion.  *Id.*  The ALJ found this more persuasive than a finding by another non-examining agency consultant Alexandra Suslow-Gedtiz, M.D., who limited Blamble to a range of sedentary exertion. *Id.*  The ALJ explained Dr. Suslow-Gedtiz's findings were less persuasive since Blamble's physical examinations have revealed she has normal gait, mobility, and strength.  *Id.*  The ALJ also noted that Blamble's mobility issues were "on and off" and that the cane she has been using was broken.  *Id.*

The ALJ found the August 2022 consultive evaluation performed by Amanda Millemon, P.A. to be partially persuasive. Filing No. 9-2 at 22.  That opinion suggested that Blamble "would likely not tolerate a lot of climbing, crawling, bending, lifting, carrying, squatting, stooping, or excessive walking and standing."  *Id.*  The ALJ explained that Blamble's examinations revealed she has a normal gait, a full range of motion, and full strength in her extremities.  *Id.*  The ALJ also noted that P.A. Millemon did not define Blamble's limitations in functional relevant terminology or suggest limitations relevant to Blamble's gastrointestinal impairments.  *Id.*  The ALJ failed to note further findings of hip and knee pain, and diagnostic and prognostic deferral to orthopedics for chronic knee issues.  *Id.*

The ALJ next addressed opinions by nurse practitioner Lea Murrell, APRN. Filing No. 9-2 at 22.  Murrell made two different opinions addressed by the ALJ.  *Id.* at 22–23. The ALJ did not find Murrell's opinion provided on September 3, 2021, to be persuasive. *Id.* at 22.  Murrell opined that Blamble's nausea and vomiting may prevent her from working.  *Id.*  The ALJ did not find this to be well-supported by other evidence on the record.  *Id.*  Blamble had reported to Murrell on September 2, 2021, that she was not

15

doing better after surgery; however, she reported to her surgeon less than a month prior, that she was doing well and did not have nausea or vomiting. Filing No. 9-2 at 22–23. The ALJ misidentified the Gastroenterology & Hepatology Fellow at UNMC as Blamble's CHI "surgeon." *Id.* at 23; *see* Filing No. 9-7 at 136. Again, Blamble was on a soft food postoperative diet. Filing No. 9-7 at 136. These medical providers wanted to see her postoperative progress before determining Blamble's ability to return to work. *Id.* Blamble also reported no vomiting in an appointment in November 2021. Filing No. 9-2 at 23. Unmentioned is the continued soft food diet, report of nausea, weight loss, ongoing epigastric and LUQ (Lower Upper Quadrant) sharp/burning pain. Filing No. 11-1 at 178. The ALJ also did not find Murrell's opinion dated March 20, 2024, to be persuasive. Filing No. 9-2 at 22–23. Murrell opined that Blamble would need to shift positions at will and have unscheduled restroom breaks at work. *Id.* at 23. Murrell also claimed that Blamble would need to lie down during an eight-hour day. *Id.* Further, Murrell indicated that Blamble would be off-task twenty percent of the workday and would miss more than four workdays per month. *Id.* The ALJ did not find these opinions supported by explanation or Blamble's records as Murrell did not indicate the frequency or length of breaks, and the ALJ did not find any objective evidence that supported a finding that Blamble would need to miss work or be off task due to her medically determinable impairment. *Id.* It should be noted that Murrell was Blamble's gastroenterology provider. Filing No. 15-1 at 85.

The ALJ determined that Blamble is able to do tasks that are simple, repetitive, and routine with "occasional contact with the general public and coworkers." Filing No. 9-2 at 23. In deciding this, the ALJ considered the opinions of state agency non-examining psychologists Rebecca Braymen, Ph.D., and Helen Montoya, Ph.D., who

opined Blamble had moderate limitations with ability to understand and remember instructions and would have mild difficulty behaving appropriately with the general public. *Id.* The ALJ also considered the agency consultative psychologist, Dr. Berryman's, assessment, which he found partially persuasive. *Id.* at 24. Dr. Berryman opined Blamble did not have difficulty completing simple tasks and appeared to be able to relate appropriately with coworkers and supervisors. *Id.* He also claimed Blamble has difficulty maintaining her social functioning. *Id.* However, this claim was vague, did not suggest what area of functioning might be impaired, and was based on Blamble's reports of hospitalization five years prior, so the ALJ did not find that opinion to be persuasive. *Id.* However, Blamble reported to Dr. Berryman that she "continues to experience flashbacks, nightmares, sleep disturbance, and intrusive, distressing memories relation to traumatic experiences during military service." Filing No. 13-2 at 66. She reported she "has panic attacks about once a month that include difficulty breathing, chest pressure, and rapid heartrate." *Id.* She also "reported having 'panic-like episodes' that resemble minor seizures a few times per week." *Id.* In addition, she reported suicidal ideation within the past few months prior to Berryman's August 9, 2022, examination. *Id.*

Conversely, the ALJ did not find treating psychologist Rebecca Schmidt's, M.D., opinion from September 1, 2021, to be persuasive. Filing No. 9-2 at 24. Dr. Schmidt opined Blamble's anxiety and stress would preclude her from work. *Id.* The ALJ explained that the opinion was not well-supported by an explanation and is not consistent with Blamble's treatment records. *Id.* The ALJ noted Blamble had been going to therapy at the VA, had reported doing better with medication, and was able to go on outings with groups, including lunches and cruises. *Id.*

The ALJ further acknowledged Blamble's husband's report but explained that "it cannot serve as the basis for a finding of disability where the medical evidence does not support such a finding." Filing No. 9-2 at 24.

After considering the evidence above, the ALJ determined Blamble has the RFC to perform light exertional work, with the limitations described above. Filing No. 9-2 at 18.

At Step Five, the ALJ found that Blamble is not capable of performing past relevant work as a customer service representative or a training representative. Filing No. 9-2 at 25. However, the ALJ noted that the transferability of jobs skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Blamble is "not disabled," whether or not she has transferable job skills. *Id.* The VE testified that an individual with Blamble's limiting factors would be able to perform the jobs of final assembler, wire wrapper, and lens inserter. *Id.* at 26. Considering the VE's testimony and Blamble's age, education, work experience, and residual functional capacity, the ALJ determined that Blamble is capable of maintaining a job that exists in significant numbers in the national economy. *Id.*

Having completed Steps One through Five, the ALJ found that Blamble was not disabled as defined by the Social Security Act. Filing No. 9-2 at 26.

### STANDARD OF REVIEW

When reviewing a determination for Social Security Disability benefits, the district court does not act as a factfinder or substitute its judgment for the judgment of the ALJ or the Commissioner. *See Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995) (citing *Loving v. Dep't of Health & Hum. Servs., Sec'y*, 16 F.3d 967, 969 (8th Cir. 1994)). The court's review is limited to an inquiry into whether there is substantial evidence on the record to

support the findings of the ALJ and whether the ALJ applied the correct legal standards. *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011); *Lowe v. Apfel*, 226 F.3d 969, 971 (8th Cir. 2000). Substantial evidence equates to something less than a preponderance of the evidence, but more than a mere scintilla; such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) (quoting *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003)); *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

However, this "review is more than a search of the record for evidence supporting the [Commissioner's] findings," and "requires a scrutinizing analysis." *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 821 (8th Cir. 2008) (quoting *Hunt v. Massanari*, 250 F.3d 622, 623 (8th Cir. 2001); *Cooper v. Sec'y of Health & Hum. Servs.*, 919 F.2d 1317, 1320 (8th Cir. 1990)). In determining whether there is substantial evidence to support the Commissioner's decision, the court must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008).

## DISCUSSION

### I.    Sequential Analysis

The Social Security Administration has promulgated a sequential process to determine whether a claimant qualifies for disability benefits. *See* 20 C.F.R. § 404.1520(a)(4). The determination involves a step-by-step analysis of the claimant's current work activity, the severity of the claimant's impairments, the claimant's RFC, his or her age, education, and work experience. *Id.* At Step One, the claimant has the

burden to establish that he or she has not engaged in substantial gainful activity since his or her alleged disability onset date. *Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998). At Step Two, the claimant has the burden to prove he or she has a severe, medically determinable, physical or mental impairment, or combination of impairments that significantly limits his or her physical or mental ability to perform basic work activities. *Cuthrell v. Astrue*, 702 F.3d 1114, 1116 (8th Cir. 2013).

At Step Three, "[i]f the claimant suffers from an impairment that is listed in [20 C.F.R. § 404.1520(a)] or is equal to such a listed impairment, the claimant will be determined disabled without considering age, education, or work experience." *Flanery v. Chater*, 112 F.3d 346, 349 (8th Cir. 1997); *see also Braswell v. Heckler*, 733 F.2d 531, 533 (8th Cir. 1984). "The Listings" stipulate the criteria for each impairment that is considered presumptively disabling. 20 C.F.R Part 404, Subpart P, App. 1 § 11.03. If the claimant does not meet the listing requirements, the ALJ will instead determine the RFC, which the ALJ uses at Steps Four and Five. 20 C.F.R. § 404.1520(a)(4).

A claimant's RFC is what he or she can do despite the limitations caused by any mental or physical impairments. *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014); 20 C.F.R. § 404.1545(a). The ALJ is required to determine a claimant's RFC based on all relevant evidence, including medical history, opinions of treating physicians and specialty physicians, and the claimant's own descriptions of his or her limitations. *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015). "The RFC must (1) give appropriate consideration to all of [the claimant's] impairments, and (2) be based on competent medical evidence establishing the physical and mental activity that the claimant can perform in a work

20

setting." *Mabry v. Colvin*, 815 F.3d 386, 390 (8th Cir. 2016) (alteration in original) (quoting *Partee v. Astrue*, 638 F.3d 860, 865 (8th Cir. 2011)).

At Step Four, the claimant has the burden to prove he or she lacks the RFC to perform his or her past relevant work. *Cuthrell*, 702 F.3d at 1116. If the claimant can still do his or her past relevant work, he or she will be found not disabled; otherwise, at Step Five, the burden shifts to the Commissioner to prove, considering the claimant's RFC, age, education, and work experience, that there are other jobs in the national economy that the claimant can perform. *See Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (citing *Reed v. Sullivan*, 988 F.2d 812, 815–16 (8th Cir. 1993)).

## II.    VA's Disability Rating

The ALJ considered evidence supporting the VA's disability rating but did not cite the September 7, 2022, VA contract examination, address the detailed disability findings by the VA consulting physician, Dr. Carvallo, or outline the Blamble's persistent medical treatment. The ALJ considered each of Bramble's conditions as a potential disability but never properly analyzed them as a whole. Dr. Carvallo, meanwhile, performed a wholistic analysis for the VA which led to a finding of Blamble to be totally disabled due the combination of her disabilities. The ALJ, instead, used interim physical findings to undermine treating physicians' diagnoses and subsequent treatments. Blamble claims the ALJ did not properly consider supporting evidence for the VA's 100% disability rating and that the ALJ failed to fully and fairly develop the record by not considering the VA contract examination. Filing No. 19 at 24. The Commissioner argues that the ALJ was not required to provide an analysis of this examination or to discuss every piece of evidence submitted. Filing No. 23 at 4–5.

Under 20 C.F.R. § 404.1504, the ALJ does not need to provide an analysis in their decision "about a decision made by any other governmental agency . . . about whether [a claimant is] disabled" for claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1504. However, the ALJ must consider "the supporting evidence underlying the other governmental agency['s] . . . decision." *Id.* Another governmental entity's disability determination is not binding on the ALJ, but the ALJ will consider the supporting evidence that went into that determination. *Loriel H. v. Kijakazi*, No. 8:21-CV-196, 2022 WL 684400, at *27 (D. Neb. Mar. 8, 2022). The ALJ examined the supporting evidence as it specifically applied to each condition or diagnosis but failed to analyze the cumulative totality of Blamble's condition.

Here, Blamble's claim was filed in December 2021, so the ALJ was not required to specifically analyze the VA's disability rating. Filing No. 9-5 at 198–99; 20 C.F.R. § 404.1504. However, the ALJ cannot disregard the evidence underlying the VA's disability rating. *Loriel H.*, 2022 WL 684400, at *27. That evidence includes the medical analysis of the VA's consulting expert, Dr. Carvallo, and the opinions of all the physicians who provided medical opinions supporting Dr. Carvallo's findings.

For example, the VA's examination by APRN Murrell commented on Blamble's unemployability. Filing No. 15-1 at 78–79. The examination acknowledged that Blamble's anxiety has a direct impact on her gastroparesis since she vomits with increased anxiety. *Id.* at 78. Blamble also reported that she discontinued her antidepressants because the medication exacerbated her gastroparesis. *Id.* The examination noted that Blamble has difficulty concentrating and staying on task, tending to skip from one task to another without completing the first task. *Id.* at 79. It also noted that her depression has an impact

22

on her motivation to complete assignments. *Id.* Finally, it stated that Blamble has other mental health problems such as panic attacks, irritability, and suspiciousness "that interfere significantly with the ability to work." *Id.*

The ALJ acknowledged these concerns in his decision and then discounted them based on selected incremental observations noted in those records without considering the totality of the examination and diagnoses of the treating physicians. Regarding her interlinked anxiety and gastroparesis, the ALJ cited VA notes from October and November 2022 that indicate Blamble's mood had improved with her new anti-depressants and that she is able to go on outings with groups, go to lunches, and plan cruises. Filing No. 9-2 at 21. The fact that Blamble could visit friends, eat at a café, or take a vacation does not obliviate the treating physicians' notes which reflect only incremental improvement and did not diminish the disability opinion of the treating physicians. Regarding her mental limitations, the ALJ found that Blamble has the capacity for simple, repetitive, and routine tasks after reviewing the neurological assessment, dated July 19, 2023, which stated Blamble had difficulties staying on task. *Id.* at 21–22. But disregarded the same examining psychologist's opinion regarding Blamble's disability. The ALJ also considered that Blamble had been diagnosed with "post-traumatic stress disorder, major depressive disorder, and panic disorder/borderline personality disorder." *Id.* at 21. The ALJ noted Blamble's limited ability to be in contact with the general public and coworkers as evidence the diagnosis had no significant effect on her ability to work. *Id.* at 17. However, no treating physician opined that this limited ability enabled Blamble to function at any job.

### 1. APRN Murrell's Medical Opinions

Blamble next argues that the ALJ was too vague in explaining why he found APRN Murrell's opinions to be unpersuasive.  Filing No. 19 at 29.  The Commissioner argues that the ALJ's reasoning was sufficient as he explained Murrell's opinions were not well-supported by other evidence on the record.  Filing No. 23 at 8.  Murrell was a treating Advanced Practice Registered Nurse (APRN) who treated Blamble.  The ALJ only gave a cursory explanation about why Murrell's opinions were unpersuasive.  The Court could find no inconsistencies in Murrell's record.

The ALJ addressed the consistency and supportability factors when determining the persuasiveness of Murrell's medical opinions.  For the opinion issued on September 3, 2021, the ALJ cited evidence before and after such date where Blamble reported that she was not "at the moment" experiencing vomiting and/or nausea.  Filing No. 9-2 at 22–23.  The ALJ used this evidence to find Murrell's opinion inconsistent.  *Id.*  However, on the dates Murrell treated Bramble, she reported vomiting, nausea, and unintentional weight loss.  *E.g.*, Filing No. 12-1 at 539, 363, 388.  For the opinion dated March 20, 2024, the ALJ explained that there was nothing in the record indicating that Blamble would have to take frequent rest breaks, lay down during the workday, or miss work.  *Id.* at 23.  However, the record shows she had irregular and frequent bladder and intestinal issues.  The ALJ ignored the VA contract examination and a gastric emptying study, because, the government correctly notes, the ALJ is not required to specifically cite this information, and a lack of a citation does not mean it was not considered.  *See Chaney v. Colvin*, 812 F.3d 672, 678 (8th Cir. 2016).  However, the ALJ must address significant clinically objective data if it is to be refuted.

24

## 2. Blamble's Subjective Complaints

Blamble next argues that the ALJ's reasoning was lacking for discrediting her subjective complaints regarding her knee, hip, gastroparesis, and mental limitations. Filing No. 19 at 30–38.

An ALJ is required to consider the following factors when evaluating a claimant's subjective complaints:

> (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints.

*Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011) (quoting *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009)). However, the ALJ is not required to explicitly discuss each factor. *Id.* (citing *Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005)). A court will defer to the ALJ's finding if the ALJ discredits the claimant's testimony, giving "good reason for doing so." *Id.* (quoting *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010)).

Here, the ALJ discredited Blamble's subjective complaints of disabling pain. First the ALJ addressed Blamble's functional restrictions. Filing No. 9-2 at 20. The ALJ evaluated evidence regarding her functional limitations, where he cited evidence that her range of motion was normal and that she did not use assistive devices during examination. *Id.* Passive range of motion and the use of assisted devices do not obviate the findings of functional restrictions due to pain. The ALJ next addressed Blamble's mental impairments. *Id.* The ALJ accounted for Blamble's difficulty concentrating, as well as her PTSD and depression by finding that she could perform simple, repetitive, and routine tasks. *Id.* at 20–23. However, a finding that she could perform simple, repetitive,

25

and routine tasks does not address whether her mental or physical conditions allowed her to perform such tasks in any sustained manner such that would allow her to maintain employment.    The ALJ also cited evidence that Blamble could manage her stress and anxiety with medication and was able to go on group outings such as lunches and cruises. *Id.* at 24.    Again, going on group outings hardly equates to performing and keeping a compensable job.   As for her gastroparesis, the ALJ cited evidence that Blamble reported less vomiting post-surgery and that she continues to use pain medication to manage her symptoms.   *Id.* at 23.   After reviewing the selected *non-treating* medical opinions, the ALJ found that there is not medical evidence to support Blamble's claim that she is totally precluded from working.   *Id.* at 23–24.   Yet he disregarded contrary medical opinions by her *treating* physicians.

The ALJ did not analyze the combined disabilities of the plaintiff to determine whether the combination of those conditions rendered Blamble unable to work.

## III.    ALJ's Step Five Denial

At Step Five, an ALJ is responsible for finding that there are other jobs in the national economy that the claimant can perform, considering the claimant's RFC, age, education, and work experience.   *See Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (citing *Reed v. Sullivan*, 988 F.2d 812, 815–16 (8th Cir. 1993)).    In making this determination, an ALJ will often use VE testimony.   The VE's testimony is in response to hypothetical questions set forth by the ALJ.   "The hypothetical is sufficient if it sets forth the impairments which are accepted as true by the ALJ." *Biberovic v. Saul*, No. 4:20 CV 915 SRW, 2021 WL 3186528, at *10 (E.D. Mo. July 28, 2021) (citing *Haggard v. Apfel*, 175 F.3d 591, 595 (8th Cir. 1999).

The ALJ gave the VE three hypotheticals. The first involved an individual "of the Claimant's age and education and with" past jobs in skilled sedentary and light work; described as "capable of performing a full range of light work, but with no ability to climb ropes, ladders or scaffolds" and a limited ability to "climb ramps and stairs, balance, kneel, stoop, crouch, and crawl;" should not have "concentrated exposure to temperature extremes, vibration, or unprotected heights;" has the ability to follow and complete "simple, repetitive, routine tasks and instructions, in jobs with no more than occasional contact with the general public and co-workers;" and should not have "more than occasional changes to the work setting." Filing No. 9-2 at 61–62. The VE testified that past work could not be performed but that light exertional jobs, such as price marker, router, and collator operator, could be performed. *Id.* at 62.

The second hypothetical involved the same individual as the first, except that the "individual also has need for access to the bathroom . . . within a two-minute walk." Filing No. 9-2 at 62–63. The ALJ requested jobs available at the sedentary exertional level for this hypothetical individual. *Id.* at 63. The VE testified that final assembler, wire wrapper, and lens inserter were available as sedentary jobs to the hypothetical individual level. *Id.*

The third hypothetical involved the same individual as the second, except this individual "has a need for unscheduled breaks, which would result in being off task for at least 20% of a workday and also has a likelihood of missing 4 or more workdays a month." Filing No. 9-2 at 63–64. When the ALJ asked the VE for jobs available for this hypothetical individual, the VE testified, "There would be no work." *Id.* at 64.

The ALJ mistakenly listed the "sedentary" jobs as the "light exertional" jobs in his written decision. Filing No. 9-2 at 25–26. The ALJ wrote that "the individual would be

27

able to perform the requirements of representative occupations at the light exertional level, . . . such as final assembler, . . . wire wrapper, . . . and lens inserter." Filing No. 9-2 at 26.

Blamble argues that the ALJ failed to cite the VE's testimony accurately and that remand is necessary. Filing No. 19 at 39–40. The Commissioner argues that the ALJ relied on a hypothetical question that was *more* restrictive than the RFC finding (sedentary vs. light exertional), so the error is not improper. Filing No. 23 at 13–14. Blamble is correct that the ALJ appears to have confused the VE's two hypotheticals. Filing No. 19 at 39. However, this error does not matter because the ALJ still incorrectly relied on the wrong hypothetical. Had he correctly relied on the third, more-restrictive hypothetical, that matched the findings that included Blamble's inability to sustain work as the result of her PTSD, irritable bowel syndrome, urinary incontinence and osteoarthritis causing her to be off task 20% of the workday, with a likelihood of missing 4 days of work per month, he would have concluded, as the VE indicated, that there would be no work available. Filing No. 9-2 at 63–64.

**CONCLUSION**

The ALJ based his decision on selective evidence. The ALJ improperly evaluated the evidence underlying the VA's disability rating. He failed to consider all of the plaintiff's impairments in combination. He also failed to clearly discuss or weigh her mental health issues. The ALJ's reliance on an inaccurate restrictive hypothetical at Step Five is inconsistent with the medical record. As such, the Court will reverse the ALJ's decision, and order that Blamble receive the benefits for which she applied.

28

**THEREFORE, IT IS ORDERED:**

1.  Plaintiff's motion to reverse (Filing No. 18) is granted; and

2.  Defendant's motion to affirm (Filing No. 22) is denied.

3.  This action is remanded with directions to the Commissioner to award benefits to the Plaintiff.

4.  The Court will enter a separate judgment in conjunction with this Memorandum and Order.

Dated this 30th day of March, 2026.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge